IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION


ANDON, LLC,

    and,

RECONCILING PEOPLE TOGETHER
IN FAITH MINISTRIES, LLC,

                                        CIVIL NO. 4:14cv76

    Plaintiffs,

    v.

THE CITY OF NEWPORT NEWS,
VIRGINIA,

    Defendant.


## OPINION AND ORDER

Plaintiffs, Andon, LLC (or "Andon") and Reconciling People Together in Faith Ministries, LLC ("the Congregation") (collectively, "Plaintiffs"), filed this suit against the City of Newport News ("Newport News" or "the City") alleging a violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). This claim arose after the City denied Plaintiffs' application for a zoning variance to operate a church at a property located in Newport News. In response, the City filed a Motion to Dismiss for lack of standing and failure to state a claim. On November 12, 2014, the parties appeared before the Court and argued their respective positions. At that hearing, the Court took the matter under advisement. For the reasons set forth below, the Court hereby **GRANTS** the City's Motion to Dismiss with prejudice.

## I.    FACTUAL BACKGROUND

The following summary is taken from factual allegations contained in Plaintiffs'

Complaint, which, for purposes of ruling on the instant Motion to Dismiss, the Court accepts as true.[1]

Formed in June 2012, the Congregation is a small, local religious organization native to Newport News. Initially, the Congregation held its meetings at a local business owned by its pastor. However, the Congregation soon decided that this location did not have the "appropriate size or amenities" to continue to use the site as a meeting place. Compl. ¶ 23; Compl. Ex. D. ¶ 5.[2] After looking at "other locations" for a worship space, the Congregation became interested in 6212 Jefferson Ave, Newport News, Virginia 23605 (the "Property"). Compl. Ex. D. ¶ 7.

Owned by Andon, LLC, the Property is a 12,503 square foot lot with a small parking lot and single brick building. It is bordered by South Avenue on the north side, a residential lot on the east side, a large government drainage ditch on the south side, and Jefferson Avenue on the west side. The Property has a zoning designation of C1.[3] This zoning district only supports the use of a church or similar place of worship if the property meets certain conditions. Under the Code of Ordinances for the City of Newport News ("Newport News Code"), which governs the applicable procedures for zoning in the City, using a C1 property as a place of worship is a permitted use only if:

> (a) access is provided from a public street directly to the property;
>
> (b) no use is operated for commercial gain;
>
> (c) no building or structure, nor accessory building or structure is located within one hundred (100) feet of any side or rear property

---

[1] In ruling on a motion to dismiss, the court must accept the plaintiff's factual allegations as true. See Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011).

[2] For the purposes of considering a 12(b)(6) motion, a district court "may consider the complaint itself and any documents that are attached to it." CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009).

[3] Newport News is divided into twenty different residential, commercial, or industrial zoning districts. R1 through R4 consist of single-family residential zoning, R5 through R9 make up multiple-family residential zoning, O1 through O3 comprise of office zoning, C1 through C5 make up different commercial zoning, M1 through M2 consist of industrial zoning, and P1 comprises of zoning for parking. Newport News Code § 45-402.

> line which is zoned single-family residential; and,

> (d) any parking lot or street serving such use is located twenty-five (25) feet or more from a side or rear property line zoned single-family residential.[4]

Newport News Code § 45-519. Although the physical contours of the Property satisfy conditions (a), (b), and (d), the Property violates subsection (c). The Property's building is located within one hundred (100) feet from the side and rear property line of three neighboring properties that are zoned single-family residential. Specifically, the Property's building is thirty-three (33) feet from side the property line of 706 South Avenue, eighty (80) feet from the side property line of 708 South Avenue, and eight-five (85) feet from the rear property line of 703 Wilcox Avenue. Nonetheless, the Congregation remained interested and, on November 28, 2012, entered into an agreement with Andon to lease the Property contingent on receiving the "requisite City approval" to operate a church on the Property. Compl. ¶ 24.

After signing the lease, initial conversations with the City's Zoning Administrator revealed that the City would reject an application for a zoning variance to use the Property as a church. Nevertheless, on March 4, 2013, Andon filed a variance application with Newport News Board of Zoning Appeals (the "Board") to operate a church on the Property. On April 9, 2013, staff from the Newport News Department of Codes Compliance ("the Department") filed a Staff Report with the Board recommending the denial of Andon's application. The Department referenced the Newport News Code, which stated that the Board "shall not authorize a variance" unless it finds:

---

[4] Subject to these conditions, churches are also permitted in zoning districts C2, C3. The zoning ordinance also permits properties zoned R1 through R9 to be used for churches or similar places of worship provided that the conditions above are met and the site be at least three (3) acres. Newport News Code §§ 45-401, 45-402. In order to operate a church, synagogue, or other place of worship in the remaining zoning districts, however, the city council must issue a conditional use permit. Id.

a. That the strict application of this ordinance would produce *undue hardship* relating to the property.

b. That such *hardship is not shared generally* by other properties in the same zoning district and in the same vicinity.

c. That the authorization of *such variance will not be of substantial detriment to adjacent property* and that the character of the zoning district will not be changed by the granting of such variance.

Newport News Code § 45-3203(c)(2) (emphasis added). After reviewing the facts, the Department found that Andon failed to meet the standards for a variance because it failed to establish "undue hardship" existed when "the property may be used without the variance approval."[5] Compl. Ex. E at 4. After a public hearing on April 16, 2013, the Board adopted the Department's recommendation and voted 3-1 to deny the variance "due to the applicant not demonstrating an undue hardship."[6] Compl. Ex. F.

Subsequently, Andon appealed the Board's decision. On October 11, 2013, the Newport News Circuit Court (the "Circuit Court") heard Andon's appeal. On November 1, 2013, the Circuit Court affirmed the Board's decision. In a written opinion, the Circuit Court relied on three grounds for its decision. First, the court found that there were a "multitude of by-right uses available to the owner of the property that do not require a one-hundred (100) foot building set-back from single family residential zoned property." Compl. Ex. G ¶ 3. Second, the court pointed out that any hardship was "shared generally by other properties" as "[t]here exist other properties along the Jefferson Avenue corridor and connecting side streets, that are zoned C1-Retail

---

[5] Virginia law defines undue hardship as "a clearly demonstrable hardship approaching confiscation, as distinguished from a special privilege or convenience sought by the applicant." Bd. of Zoning Appeals of City of Va. Beach v. Nowak, 227 Va. 201, 204, 315 S.E.2d 221, 223 (1984) (quoting Packer v. Hornsby, 221 Va. 117, 120–21, 267 S.E.2d 140, 141–42 (1980)). However, "[f]inancial loss, standing alone, is not sufficient to justify the granting of a variance. Baum v. Lunsford, 235 Va. 5, 8, 365 S.E.2d 739, 741 (1988).

[6] The Board made different determinations of distance than presented in Plaintiffs' Complaint. The Board concluded that the Property would encroach sixty-seven (67) feet, fifteen (15) feet, and twenty (20) feet into the minimum one-hundred (100) side and rear property lines of the three neighboring properties that are zoned single-family residential. For the purposes of considering the City's Motion to Dismiss, however, the Court adopts the distance designations presented in the Complaint.

4

Commercial and are bordered by R4-Single Family Residential property." Id. ¶ 4. Finally, the court concluded that "because of the characteristics and effects of a [*sic*] church use and the likelihood that such characteristics and effects are incompatible with a close proximity . . . to single family residential uses of property" the "variance application would be substantially detrimental to adjacent single family residential property." Id. ¶ 5.

From these facts, Plaintiffs brought suit against the City claiming that the City's denial of the variance violated RLUIPA. The City subsequently filed the instant Motion to Dismiss.

## II.    MOTION TO DISMISS

### A.    Standard of Review

Federal Rule of Civil Procedure 8(a)(2) mandates that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This directive has not been interpreted to require "detailed factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). It does require, however, a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to allow such an inference. Id. (citing Twombly, 550 U.S. at 555, 127 S. Ct. at 1964).

Where a plaintiff fails to state a claim upon which relief can be granted, or otherwise fails to meet the requirements of Rule 8(a)(2), Federal Rule of Civil Procedure 12(b)(6) permits a party to move the court to dismiss an action. The function of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint; "importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992). The Fourth Circuit has held that a motion to

dismiss under Rule 12(b)(6) should be granted only in "very limited circumstances." Rogers v. Jefferson–Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989). However, dismissal is appropriate if it appears that the plaintiff is not "entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." Harrison v. U.S. Postal Serv., 840 F.2d 1149, 1152 (4th Cir. 1988) (citation omitted); Davis v. Hudeins, 896 F. Supp. 561, 566 (E.D. Va. 1995). When reviewing the legal sufficiency of a complaint, the Court must accept "all well-pleaded allegations in the plaintiff's complaint as true" and draw "all reasonable factual inferences from those facts in the plaintiff's favor." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). Legal conclusions, on the other hand, are not entitled to the assumption of truth if they are not supported by factual allegations. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.

### B. Plaintiffs' RLUIPA Claim

In the present case, Plaintiffs brings a single claim under Section (a)(1) of RLUIPA. Under Section (a)(1) of RLUIPA,

> [n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—
>
> (A) is in furtherance of a compelling governmental interest; and
>
> (B) is the least restrictive means of furthering that compelling governmental interest.

Id. § 2000cc(a)(1). In their Complaint, Plaintiffs allege that the City's denial of Andon's application for a zoning variance amounted to a "substantial burden on the religious exercise" of the Congregation. Compl. ¶¶ 40–53.

In response, the City moves to dismiss Plaintiffs' RLUIPA claim on two grounds. First, the City claims that Andon should be dismissed as a party for lack of standing. Second, the City

6

maintains that the Congregation's remaining claim should be dismissed on the grounds that Plaintiffs fail to sufficiently plead a RLUIPA claim. As courts generally resolve questions of standing before proceeding to the merits of a claim, Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 305 (4th Cir. 2006) ("Only if a party has standing to appeal do we possess authority to decide the merits of his contentions."); Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005), the Court will first consider the issue of standing.

### 1.      Standing

The first issue presently before the Court is whether Andon has standing to bring a claim under RLUIPA. The City claims that the Complaint fails to allege that one of the plaintiffs, Andon, is engaged in religious exercise. The City maintains that RLUIPA requires all plaintiffs to prove a substantial burden on their exercise of religion. However, as the City points out, the allegations concerning religious exercise reference only the Congregation. See Compl. ¶¶ 26, 46, 47. Accordingly, the City concludes that Andon lacks standing to bring a RLUIPA claim.

Plaintiffs, on the other hand, assert that Andon has standing simply as the owner of the Property. Plaintiffs argue that there is no requirement under RLUIPA that a plaintiff be engaged in religious activity to bring a claim. As a result, Andon needs to satisfy only the standing requirements as mandated by Article III of the Constitution, which the Plaintiffs maintain Andon clearly meets as the owner of the Property.

The parties' dispute over standing, therefore, centers on whether a plaintiff must be engaged or involved in some kind of religious activity to bring a claim under RLUIPA. Upon reviewing the statute and relevant case law, the Court finds there is no requirement that a plaintiff be engaged in religious exercise to bring a RLUIPA claim.

To begin with, the language in the statute indicates that no such requirement exists. A

plain reading of the Section (a)(1) of RLUIPA shows that a plaintiff must establish only "a substantial burden on the religious exercise of a person." 42 U.S.C. § 2000cc(a)(1). The statute also outlines only a single standing requirement. RLUIPA states that "[s]tanding to assert a claim or defense under this section shall be governed by the general rules of standing under Article III of the Constitution." 42 U.S.C.A. § 2000cc–2(a). In addition, interpreting RLUIPA as to avoid requiring each plaintiff to be engaged in religious exercise also aligns with the clearly stated congressional intent of RLUIPA. The statute explicitly states that "[t]his chapter shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." Id. at § 2000cc–3(g). Recognizing an additional limitation for standing, therefore, would contradict one of the clearly stated purposes of the statute—to broadly protect religious exercise under RLUIPA. Accordingly, the requirement that a plaintiff be engaged in religious activity is not only conspicuously absent from RLUIPA but also directly conflicts with the clear intent of the statute.

Additionally, the existing case law also calls the existence of an additional standing requirement into doubt. There exist very few cases that address whether a plaintiff is required to have engaged in religious exercise to bring a RLUIPA claim. However, one case, Dixon v. Town of Coats, No. 5:08–cv–489, 2010 WL 2347506 (E.D. N.C. June 9, 2010), has explicitly considered the existence of this requirement, albeit in an unpublished opinion. In Dixon, a property owner entered into a lease with a church group that desired to use the owner's property for a church. When the lessees petitioned the town to have the property's water service activated, however, the Zoning Administrator denied their request on the grounds that the property was not zoned for church use. After the owner brought a RLUIPA claim, the town subsequently moved to dismiss the case on the grounds the property owner lacked standing. After reviewing the

relevant case law, the court sided with the land owners—finding that "there is hardly a wholesale ban on private landowners asserting substantial burden claims under RLUIPA." Id. at *5.

One of the cases that the court in Dixon cited to for this proposition, which Plaintiffs here also cite to for legal support, is Dilaura v. Ann Arbor Chater Township, 30 Fed. App'x 501 (6th Cir. 2002), an unpublished, *per curiam* opinion from the Sixth Circuit. In Dilaura, the plaintiffs included both a religious organization and a development company that wished to donate property to the organization to be used for religious purposes. After Ann Arbor denied a zoning variance, the plaintiffs brought a claim against the town under the Religious Freedom Restoration Act ("RFRA"). The district court found that neither plaintiff had standing to raise such a claim. While plaintiffs appeal was pending, however, the RFRA was declared unconstitutional and amended by RLUIPA.

On appeal, the Sixth Circuit converted the RFRA claim into a RLUIPA claim and proceeded to find both parties had standing. After finding that the development company had Article III standing, the court examined the language of RLUIPA. The court found that "religious use of land is the core concept protected by that statute." Dilaura, 30 Fed. App'x at 507. Consequently, the court looked to the definition of the term "land use regulation," which under RLUIPA is described as

> a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement, servitude or other property interest in the regulated land or a contract or option to acquire such an interest.

Id. (quoting 42 U.S.C. § 2000cc–5(5)). The court relied on this language to conclude that the development company had standing "as record title owner" of the property at issue. Id. Throughout this analysis, the court never considered whether the development company had

engaged in religious exercise—signifying that no such requirement exists. <u>Dilaura</u>, when considered together with <u>Dixon</u> and the statutory language of RLUIPA, indicate that a plaintiff is not required to be engaged in religious activity to have standing under RLUIPA.

To rebut Plaintiffs and support the contention that RLUIPA does include such a requirement, the City cites to a single case. The City points out that in this case, <u>Calvary Christian Center v. City of Fredericksburg, Virginia</u>, 832 F. Supp. 2d 635 (E.D. Va. 2011), the Court announced that "[t]o qualify for protection under RLUIPA, a plaintiff must be engaged in a religious activity." <u>Id.</u> at 642. Upon closer examination, however, the Court's language actually stands for another different but related proposition.

In <u>Calvary Christian Center</u>, the plaintiff, a religious organization, applied for a special use permit to lease the organization's space to the operator of a private day school for disabled children. After the Fredericksburg City Council denied the application, the plaintiff brought a RLUIPA action. The defendant subsequently brought a motion to dismiss, claiming that the plaintiff failed to allege "religious exercise." Applying RLUIPA, the Court made the statement that "a plaintiff must be engaged in a religious activity" in passing with no explanation or reason for or against its adoption. <u>Id.</u> at 642. Consequently, the Court found that the plaintiff had "not pled any facts demonstrating that the operation of the day school by a third party is a religious exercise." <u>Id.</u> at 642. Accordingly, the Court promptly dismissed the plaintiff's RLUIPA claim. <u>Id.</u>

In light of these facts, the statement is merely an attempt to repeat the statutory requirement that a plaintiff must prove "a substantial burden on the religious exercise of a person." As the plaintiff in <u>Calvary Christian Center</u> was the "person" whose "religious exercise" was allegedly being burdened, the Court used this language to explain that in such cases, the

10

plaintiff must in fact prove that he was engaged in religious activity that was substantially burdened. The fact that the statement was made in passing without any further explanation reinforces this conclusion. After all, the Court would have likely avoided adopting such a requirement without further analysis.

After considering the statutory language of RLUIPA and the relevant case law, this Court finds that a plaintiff is not required to be engaged in religious exercise to bring a claim under RLUIPA. As a result, the only standing requirement a plaintiff must satisfy under RLUIPA is the "general rules of standing under Article III of the Constitution." 42 U.S.C.A. § 2000cc-2(a). A cursory analysis reveals that Andon easily meets this test.

Article III grants federal courts jurisdiction only over "cases and controversies." U.S. CONST. art. III, § 2, cl. 1. The doctrine of standing identifies these "cases and controversies" "appropriate for judicial resolution." Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006). Under this doctrine, "[t]here are three components of constitutional standing: (1) the plaintiff must allege that he or she suffered an actual or threatened injury that is not conjectural or hypothetical, (2) the injury must be fairly traceable to the challenged conduct; and (3) a favorable decision must be likely to redress the injury." Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136 (1992)).

First, the Court must consider whether Andon suffered an actual injury from the City's denial of its application for zoning variance. Plaintiffs make several allegations regarding Andon's role in the case. Clearly, Plaintiffs assert that Andon is the owner of the Property. Compl. ¶ 9. Plaintiffs further allege that, as the owner, Andon entered into an agreement with the Congregation "to lease the Property as a church, contingent on requisite City approval." Id. ¶ 24.

The Fourth Circuit has not directly addressed a whether parties to contracts contingent on

11

rezoning approval have incurred an actual injury under Article III standing requirements. However, other courts have touched on this issue. Another federal district court has found that "[f]ederal courts have recognized the standing of developers with contracts contingent on acquiring rezoning or building permits to challenge government action concerning the rezoning or issuing of permits." Chesterfield Dev., Corp. v. City of Chesterfield, 758 F. Supp. 1309, 1311 (E.D. Mo. 1991). This conclusion conceptually aligns with the Fourth Circuit's decision in Scott v. Greenville County, 716 F.2d 1409 (4th Cir. 1983), in which the court found that "the denial of a building permit for [plaintiff's] proposed multi-family housing complex" constituted an actual injury. Id. at 1414–15. The Fourth Circuit came to this conclusion despite the fact that the development had only been proposed at this time, which, consequently, meant the benefit had not yet been realized. As a result, the Court concludes that the loss of a future, but non-speculative, benefit is sufficient to establish an actual injury.

Although Plaintiffs do not allege the specific amount of lost future profits, the mere fact that Andon lost the future, non-speculative benefit of lease payments is sufficient by itself to constitute an actual injury. "[A] relatively small economic loss—even an 'identifiable trifle'—is enough to confer standing." Katz v. Pershing, LLC, 672 F.3d 64, 76 (1st Cir. 2012) (quoting Adams v. Watson, 10 F.3d 915, 924 (1st Cir.1993)); see also Brandt v. Vill. of Winnetka, Ill., 612 F.3d 647, 649 (7th Cir. 2010) ("Standing exists when the plaintiff suffers an actual or impending injury, no matter how small . . . ."). Therefore, the loss of any future profits from the conditional lease resulted in an actual injury to Andon.

The remaining elements of the Article III standing test are easily satisfied. Any injury Andon suffered, such as the loss of benefit from lease payments, can be easily traced to the City's denial of the variance application. In addition, a favorable decision could redress Andon's

injury, as the Court could order the City to grant the variance. Therefore, as Andon satisfies Article III standing requirements, the Court **FINDS** that Andon has standing to bring a RLUIPA claim against the City.

### 2.      Failure to State a Claim

The second issue before this Court is whether Plaintiffs successfully state a claim under RLUIPA. Specifically, the parties contest whether Plaintiffs sufficiently allege a substantial burden. As mentioned earlier, Section (a)(1) of RLUIPA states that "[n]o government shall impose or implement a land use regulation in a manner that imposes a *substantial burden* on the religious exercise of a person, including a religious assembly or institution . . . ." 42 U.S.C. § 2000cc(a)(1) (emphasis added). In the single case in which it has defined a substantial burden in the context of a RLUIPA claim, the Fourth Circuit found that "a plaintiff can succeed on a substantial burden claim by establishing that a government regulation puts *substantial pressure on it to modify its behavior.*" Bethel World Outreach Ministries v. Montgomery Cnty. Council, 706 F.3d 548, 556 (4th Cir. 2013) (emphasis added). The Fourth Circuit has also noted that "[w]hen a religious organization buys property reasonably expecting to build a church, governmental action impeding the building of that church may impose a substantial burden." Id. (citing Petra Presbyterian Church v. Vill. of Northbrook, 489 F.3d 846, 851 (7th Cir. 2007)). "This is so even though other suitable properties might be available, because the 'delay, uncertainty, and expense' of selling the current property and finding a new one are themselves burdensome." Id. (citing Saints Constantine & Helen Greek Orthodox Church, 396 F.3d 895, 899–901 (7th Cir. 2005)).

In their Complaint, Plaintiffs allege that the City's denial of their zoning variance caused the Congregation "delay, uncertainty, and expense" in finding a worship place, which constituted

13

a substantial burden on the Congregation's religious exercise. Compl. ¶¶ 26, 46, 48–49, 53; Compl. Ex. D. Specifically, Plaintiffs claim that the Congregation has suffered "delay in obtaining a viable worship location" and "uncertainty as to whether or not the Congregation will be able to go forward with the lease the Property." Compl. ¶ 48. In support of these allegations, Plaintiffs attach an affidavit from the pastor of the Congregation that provides further details of the burden suffered Congregation. The pastor states that "[c]urrently, the Church meets at my local business" but it "does not have appropriate size or amenities for the church to continue using the location." Compl. Ex. D ¶ 5. The pastor elaborates on the search for an alternative property, asserting that "[p]rior to signing this lease, I looked at other locations, but could not find a location that was the appropriate size, location, and price." Id. ¶ 7. The pastor also mentions that out of the buildings searched "[m]any of the buildings were too large and too expensive for our young congregation." Id. ¶ 8.

Plaintiffs maintain that these claims sufficiently allege that the Congregation's religious exercise was substantially burdened. For support, Plaintiffs chiefly rely on two cases. A review of these cases, however, reveals that both are inapplicable to the case at bar. First, Plaintiffs reference one of this Court's prior cases Chase v. City of Portsmouth, No. 2:05cv446, 2005 WL 3079065 (E.D. Va. Nov. 16, 2005) (Doumar, J.). In that case, the plaintiffs alleged that city's ban on operating a church on property they owned, "monetary loss from purchasing the property," and "their inability to bring their religious message to the downtown Portsmouth community" amounted to a substantial burden under RLUIPA. Id. at *5. In considering a motion to dismiss, this Court concluded that it was "unnecessary to define exact contours of a substantial burden at this stage of the litigation." Id. As a result, this Court found that "[g]iven the plaintiffs allegations that their inability to use the regulated property for religious exercise is a substantial

burden" as well as the plaintiffs' "desire to educate by bringing a religious message to downtown Portsmouth," the plaintiffs had successfully pled a substantial burden. Id.

Plaintiffs contend that Chase provides sufficient support for finding the Congregation's religious activity was substantially burdened in the present case. However, legal developments since this Court's ruling in Chase render it inapplicable to the case at bar. Chase was decided before the Supreme Court's rulings in Twombly and Iqbal set a new, stricter standard for pleading. Therefore, Chase has very little persuasive value, as the legal framework under which it was decided ceases to exist. However, even if Chase were decided under the same pleading standard, it is completely distinguishable from the present case. In Chase, not only did the plaintiffs own the property but the church on the property "was built in 1899 and was used continuously as a house of worship until 1998."[7] Id. at *1. In contrast, here, the Congregation has not bought the Property nor has the Property ever operated as any type of worship place. As a result, the plaintiffs in Chase had a reasonable expectation to use the property as a church that Plaintiffs here simply never possessed. Accordingly, Chase is irrelevant to the case at bar.

The other case Plaintiffs cite to is Saints Constantine. In that case, a church bought a forty-acre tract in a residential zone. The church then applied for permission to rezone a portion of this property allow the operation of a church. After modifying its proposal to address and satisfy the preliminary concerns of the city planning department, the planning commission rejected the proposal. After the church brought a RLUIPA claim against the city to challenge the commission's decision, the district court granted summary judgment for the city. On appeal, the Seventh Circuit reversed. Initially, the court expressed doubt regarding the motives of the city— accusing it of "playing a delaying game." 396 F.3d at 899. After taking note of this fact, the court

---

[7] The property at issue also had a "two-story stone building with a tall steeple." Chase, 2005 WL 3079065, at *1. Of course, as the popular saying goes: "If it looks like a duck, swims like a duck, and quacks like a duck, then it probably is a duck."

reasoned that the denial of the church's application forced it to "either to sell the land that it bought . . . and find a suitable alternative parcel or be subjected to unreasonable delay by having to restart the permit process to satisfy the Planning Commission about a contingency for which the Church has already provided complete satisfaction." Id. at 900. Consequently, the court concluded that denial of the church's application caused "delay, uncertainty, and expense" that rendered the burden to the church substantial. Id. at 901.

Here, Plaintiffs assert that the Congregation has suffered similar "delay in obtaining a viable worship location and "uncertainty as to whether or not the Congregation will be able to go forward with the lease the Property." Compl. ¶ 48. The case at bar, however, is distinguishable from Saints Constantine. Unlike the church in Saints Constantine, here, the Congregation has not experienced the same degree of delay and expense. Although the Congregation has suffered uncertainty in whether it will lease the Property, the time and money expended in finding a new property will be minimal. It does not have to sell a property or even void a lease, as the lease between Andon and the Congregation is conditioned on the granting of the variance. In addition, there is no doubt regarding the propriety of the City's motives in the present case. Unlike Saints Constantine, where the Seventh Circuit questioned the motives of city officials, it is clear that Newport News undertook the painstaking analysis necessary to apply the applicable zoning laws in a neutral fashion. Accordingly, the Seventh Circuit's decision in Saints Constantine is not persuasive as applied to the present case, let alone dispositive.

Despite Plaintiffs' arguments to the contrary, the City's denial of the zoning variance does not amount to a substantial burden on the Congregation's religious exercise. As an initial matter, it is questionable whether the land use regulation has caused the Congregation to modify its behavior, which is required under the Fourth Circuit test. Plaintiffs allege that the lease

agreement was contingent on obtaining the "requisite City approval" to operate a church on the Property. However, since the City never approved the variance, the lease never took effect. As a result, the Congregation is in the same position as it was when it entered the agreement—searching for a suitable place of worship.

Assuming *arguendo* that the City's denial of the variance did modify the Congregation's behavior, the minimal delay and uncertainty caused by the City's denial of the zoning variance does not amount to a substantial burden. To begin with, the mere fact that the C1 zoning designation did not permit a church cannot support a substantial burden. Otherwise, "every zoning ordinance that didn't permit churches everywhere would be a prima facie violation of RLUIPA." Petra Presbyterian Church, 489 F.3d at 851. Furthermore, it is significant that the Congregation never had a reasonable expectation that it could use the Property as a church. The initial conversations between Andon and the City's Zoning Administrator revealed that the City would reject any variance application to build a church at the Property. Additionally, the Congregation made the lease contingent on "requisite City approval" to operate a church on the Property. These facts show that the Congregation was clearly aware that the City was likely to deny the application for a zoning variance. Without a reasonable expectation to use the property, the Congregation undoubtedly assumed some risk that the variance would in fact be denied. See id.

Plaintiffs' argument for a substantial burden, therefore, seems to solely rely on the delay and uncertainty the Congregation experienced finding an *affordable* worship place in Newport News. Plaintiffs are correct that the City's denial of the variance application may cause the Congregation to suffer some delay and uncertainty in locating a worship place within its price

range.[8] However, as the Congregation clearly assumed some risk in pursuing a property that never supported the operation of a church, the Congregation's delay and uncertainty is largely attributable to its own choice to stop searching for an affordable worship location. The Congregation, after all, never alleges that it considered all, or even most, of the available properties in Newport News but merely alleges it "looked at other locations."[9] Compl. Ex. D. ¶ 7. The Court refuses to find the Congregation experienced a substantial burden when the delay and uncertainty on which Plaintiffs rely to establish a burden is both self-imposed and unclear. Accordingly, Plaintiffs' allegations are simply insufficient to establish a substantial burden.

Nevertheless, even if Plaintiffs amend the Complaint to establish that the Congregation searched all available properties in Newport News, it still could not sufficiently allege a substantial burden. Since the Congregation attempted to lease and not buy the Property, the costs incurred by the Congregation's delay and uncertainty in locating a worship space can be attributed simply to the difficulties associated with finding an affordable property in an urban market. As reiterated by other courts, the cost of having to search for an affordable location alone does not amount to a substantial burden. Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752 (7th Cir. 2003) (finding "the scarcity of affordable land available" "along with the costs, procedural requirements, and inherent political aspects of the Special Use, Map Amendment, and Planned Development approval processes" "incidental to any high-density urban land use" and constitute "ordinary difficulties associated with location (by any person or

---

[8] Ironically, the price of the Property may only be affordable to the Congregation due to the very zoning restrictions Plaintiffs ask this Court to remove. Without these restrictions, the price of the Property may very be outside the Congregation's price range.

[9] In addition to the allegations made in its Complaint, Plaintiffs also attach a map showing the respective zoning districts of the properties neighboring the Property. Compl. Ex. B. Although the map does not specify which properties are available for purchase and whether the physical conditions of these properties allow the use of a church, many of the surrounding properties possess zoning designations that would support the operation of a church. As a result, the Court can assume that zoning districts exist within Newport News that would support the use of a church.

entity, religious or nonreligious) in a large city"); Love Church v. City of Evanston, 896 F.2d 1082, 1086 (7th Cir.1990) ("Whatever specific difficulties [plaintiff church] claims to have encountered, they are the same ones that face all [land users]. The harsh reality of the marketplace sometimes dictates that certain facilities are not available to those who desire them."); see also Episcopal Student Found. v. City of Ann Arbor, 341 F. Supp. 2d 691, 701 (E.D. Mich. 2004) ("[A] government regulation does not substantially burden one's religious exercise if it only has an incidental effect that makes it more expensive or difficult to practice the religion."). The Court finds these cases persuasive and concludes that the difficulty associated with finding an affordable location in an urban area alone does not amount to a substantial burden. As Plaintiffs rely solely on the unaffordability of alternative properties in Newport News to establish the Congregation's delay and uncertainty in finding a worship place, Plaintiffs cannot plausibly allege a substantial burden.

It is also significant that if the Court were to find a substantial burden here, it would not only contradict the legislative intent of RLUIPA but also the Constitution. When passing RLUIPA, "Congress did not intend to permit religious organizations to exempt themselves from neutral zoning provisions." Bethel, 706 F.3d at 557 n.4. In the legislative record, a joint statement of Senators Orrin Hatch and Ted Kennedy clearly asserts that "[t]his Act does not provide religious institutions with immunity from land use regulation, nor does it relieve religious institutions from applying for variances, special permits or exceptions, hardship approval, or other relief provisions in land use regulations, where available without discrimination or unfair delay." 146 Cong. Rec. S7774-01, S7776 (daily ed. July 27, 2000). Thus, a religious organization cannot "state a RLUIPA substantial burden claim simply by alleging that it received an adverse land use ruling." Bethel, 706 F.3d at 557 n.4. As a result, "a

court will likely find that a religious organization has not pled a substantial burden claim merely by alleging that it moved to an area in which generally applicable zoning provisions bar construction of churches." Id. Here, the Property's zoning district did not support a church when the Congregation entered the conditional lease. Consequently, finding a substantial burden here would be equivalent to granting the Congregation immunity from a neutral land use regulation, see Petra Presbyterian Church, 489 F.3d at 851 ("Unless the requirement of substantial burden is taken seriously, the difficulty of proving a compelling governmental interest will free religious organizations from zoning restrictions of any kind."), which would, in turn, controvert the legislative intent of RLUIPA.

Additionally, granting religious organizations immunity from land use regulations would have the added effect of violating the Constitution. "'A proper respect for both the Free Exercise and the Establishment Clauses compels the State to pursue a course of 'neutrality' toward religion,' favoring neither one religion over others *nor religious adherents collectively over nonadherents*" Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet, 512 U.S. 687, 696, 114 S. Ct. 2481, 2487 (U.S. 1994) (quoting Comm. for Pub. Educ. & Religious Liberty v. Nyquist, 413 U.S. 756, 792–793, 93 S. Ct. 2955, 2975 (1973) (emphasis added)). As a result, "[w]hile government unquestionably may take positive steps to protect the free exercise of religion, it must avoid going so far in this goal as to adopt a preference for one religion or for religion generally." Westchester Day Sch. v. Vill. of Mamaroneck, 386 F.3d 183, 190 (2d Cir. 2004). Finding the application of a neutral land use regulation to constitute a substantial burden would result in granting religious organizations immunity from regulations that regularly apply to nonreligious organizations—effectively favoring former over the latter. As part of its balancing

act,[10] the Court must avoid such a result.

Therefore, the Court **FINDS** that Plaintiffs cannot plausibly allege a substantial burden to the Congregation's religious exercise, as required under RLUIPA.

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Court hereby **GRANTS** the City's Motion to Dismiss with prejudice.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**

Robert G. Doumar
Senior United States District Judge

UNITED STATES DISTRICT JUDGE

Newport News, VA
November 20, 2014

---

[10] As previously noted by the Second Circuit, the Court acknowledges that the application of RLUIPA is frequently a balancing act between statutory adherence and constitutional concerns. <u>Westchester Day Sch.</u>, 386 F.3d at 190 ("As a legislative accommodation of religion, RLUIPA occupies a treacherous narrow zone between the Free Exercise Clause, which seeks to assure that government does not interfere with the exercise of religion, and the Establishment Clause, which prohibits the government from becoming entwined with religion in a manner that would express preference for one religion over another, or religion over irreligion.").

21